In the Matter of NORTHERN DUTCHESS ROD AND GUN CLUB, INC., Respondent, v TOWN OF RHINEBECK et al., Appellants. [814 NYS2d 691]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Town of Rhinebeck Zoning Board of Appeals dated December 17, 2003, which reversed a determination of the Zoning Enforcement Officer of the Town of Rhinebeck, dated September 5, 2003, that the petitioner was not required to obtain a particular area variance, Spero Chumas and Dan Walsh appeal, and the Town of Rhinebeck and the Town of Rhinebeck Zoning Board of Appeals separately appeal, (1) from a judgment of the Supreme Court, Dutchess County (Brands, J.), dated May 13, 2004, which granted the petition and annulled the determination of the Town of Rhinebeck Zoning Board of Appeals and (2), as limited by their respective briefs, from so much of an order of the same court dated September 9, 2004, as, upon reargument, adhered to the original determination.

Ordered that the judgment is modified, on the law, by adding a provision thereto remitting the matter to the Town of Rhinebeck Zoning Board of Appeals for a new determination in accordance herewith; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the order is modified accordingly; and it is further,

Ordered that the appeal from the order is dismissed as academic, without costs or disbursements.

On September 5, 2003 the Zoning Enforcement Officer of the Town of Rhinebeck (hereinafter the ZEO) determined that the petitioner, which sought to install, inter alia, "shooting stands" and "target throwing devices" on a portion of its property that was approximately 300 feet away from a particular road that was used by the public, did not need an area variance in order to do so. In support of his determination, the ZEO observed that the petitioner was prohibited by Town of Rhinebeck Zoning Code § VI (B) (17) (d) from installing the structures within 500 feet of a "property boundary," which was a phrase that was not defined by the Town of Rhinebeck Zoning Code. However, the ZEO, who consulted with two surveyors who "stated that the 'property boundary' [was] the property line that surround[ed]

the entire parcel," determined that the road, which bisected the petitioner's property, was not a "property boundary."

Subsequently, two neighboring landowners submitted an "application for interpretation" to the Town of Rhinebeck Zoning Board of Appeals (hereinafter the ZBA). In a supplement to their application, they explained that their contention was that the road "constitute[d] a 'property boundary' for purposes of" Town of Rhinebeck Zoning Code § VI (B) (17) (d), "and, as a result, a variance [was] required from [the] 500-foot limitation." After holding public hearings, the ZBA, in a resolution dated December 17, 2003, determined that the petitioner needed an area variance in order to install the shooting stands and target throwing devices.

The petitioner then commenced the instant proceeding, seeking to have this determination annulled. In the resultant judgment, the Supreme Court annulled the determination. We conclude that the Supreme Court correctly did so.

As the Supreme Court observed, the "narrow issue" before the ZBA, as framed by the application for interpretation, was whether the ZEO properly interpreted the phrase "property boundary." However, the ZBA, which was required to "make such . . . interpretation . . . as in its opinion ought to have been made by" the ZEO (Town of Rhinebeck Zoning Code § XI [B] [1]), never addressed this issue. Rather, the ZBA, which stated in its resolution that "the issue of public safety takes precedence over the issue of what constitutes a property boundary," based its determination solely on public safety concerns, which, it appears, were prompted by "generalized objections of neighbors" at the public hearings (*Matter of Ifrah v Utschig,* 98 NY2d 304, 308 [2002]). While we agree with the dissent that the ZBA can properly consider public safety concerns when interpreting an ambiguous provision in a zoning ordinance—indeed, the Town of Rhinebeck Zoning Code indicates that it was "adopted . . . to protect and promote public health, safety . . . and general welfare" (Town of Rhinebeck Zoning Code § I [C])—it is clear that the ZBA neither interpreted nor defined the phrase "property boundary."

Accordingly, the matter should have been remitted to the ZBA, so that it may properly consider whether the ZEO correctly determined that the road was not a "property boundary" (*see Matter of James H. Maloy, Inc. v Zoning Bd. of Appeals of Town of Sand Lake,* 168 AD2d 874 [1990]). Florio, J.P., Fisher and Covello, JJ., concur.

Goldstein, J. (dissenting and voting to reverse the judgment, vacate the order, and dismiss the appeal from the order as aca-

demic, on the law, and to confirm the determination of the Town of Rhinebeck Zoning Board of Appeals dated December 17, 2003, with the following memorandum): The petitioner owns 342 acres of land located at 140 Enterprise Road in a residential three-acre zoning district in the Town of Rhinebeck. The petitioner's use of the property constitutes a pre-existing nonconforming use. Expansion of its use of the property is permitted by special permit (*see* Town of Rhinebeck Zoning Code § VI [B] [16]).

This controversy arose when the petitioner installed a new trap-shooting facility at the site in 2002 without a special permit or site plan approval. According to the petitioner, the devices were "approximately 300 feet" from the edge of Enterprise Road. On March 17, 2003 the Town of Rhinebeck Zoning Enforcement Officer (hereinafter the ZEO) issued a cease and desist order on the ground that the new trap-shooting facility was constructed without site plan approval by the Town of Rhinebeck Planning Board (hereinafter the Planning Board).

At a public hearing before the ZBA, members of the public noted that the new trap-shooting facility was parallel to and visible from Enterprise Road, which is a public highway.

The ZBA determined that the "new facilities may not be utilized until a Special Permit and Site Plan approval are granted." The petitioner did not challenge that determination. It applied to the Planning Board for site plan approval.

During the proceeding before the Planning Board a question arose as to whether an area variance from Town of Rhinebeck Zoning Code § VI (B) (17) (d) was required before site plan approval could be granted. Town of Rhinebeck Zoning Code § VI (B) (17) (d) states that "[n]o target range or other facility for the discharge of firearms shall be located closer than five hundred (500) feet from any property boundary."

At issue was whether Enterprise Road, which bisects the petitioner's property, constituted "any property boundary." On September 5, 2003 the ZEO determined that no variance was required on the grounds that "Enterprise Road is not a dedicated road, but rather, a right-of-way through the gun club property," and two local surveyors "stated that the 'property boundary' is the property line that surrounds the entire parcel."

Before the ZBA, the appellants contended, inter alia, that "[t]he Town of Rhinebeck Planning Board has historically taken the position" that when a public road divides a parcel of land that creates a "natural, and *de facto* subdivision" and therefore a "property boundary." They further noted that the Town of Rhinebeck Zoning Code contained no definition of "property boundary."

At a public hearing before the ZBA, the petitioner's attorney stated that the petitioner owns Enterprise Road. However, he acknowledged that Enterprise Road must remain open to the public pursuant to Highway Law § 189, which states that "[a]ll lands which shall have been used by the public as a highway for the period of ten years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway."

In the determination under review dated December 17, 2003, the ZBA determined that "a variance or variances are required." In its reasoning for that determination, the ZBA found that "Enterprise Road is a well-used thoroughfare that is maintained by the Town." The ZBA further concluded that the intent of the provision prohibiting facilities for the discharge of firearms closer than 500 feet from any property boundary was to protect the public, therefore "[t]he location of Enterprise Road relative to the new equipment is the determining factor."

The petitioner commenced the instant proceeding pursuant to CPLR article 78. Judicial review pursuant to CPLR article 78 is limited to ascertaining whether the action taken is illegal, arbitrary and capricious, or an abuse of discretion. In the judgment appealed from, the Supreme Court set aside the determination, holding that the ZBA "focused upon on an issue of public safety" which was "not the factor properly before it." Upon reargument, the Supreme Court adhered to its original determination. I would reverse and confirm the determination of the ZBA.

Since there is no definition of "any property boundary" in the Town of Rhinebeck Zoning Code, the ZBA was required to resort to principles of statutory interpretation (see *Matter of Newman v Zoning Bd. of Appeals of Town of Yorktown,* 121 AD2d 543, 544 [1986]). When the meaning of a statute is unclear, the "legislative intent in the purpose of the enactment" is considered (McKinney's Cons Laws of NY, Book 1, Statutes § 92, at 183; *see Carney v Philippone,* 1 NY3d 333 [2004]). Town of Rhinebeck Zoning Code § I (C) states that the legislative purpose of the Zoning Code is "to protect and promote public health, safety . . . and general welfare." That language is consistent with long-standing law in this state that the general purpose of zoning regulations is to promote "the health, comfort, safety and general welfare of the community" (*Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221, 224 [1971]).

Further, it is well-settled law that the words of a statute should not be interpreted to achieve an absurd result (*see People v Santi,* 3 NY3d 234, 242 [2004]; *Zappone v Home Ins. Co.,* 55

NY2d 131, 137 [1982]). A statutory interpretation which "does not in any way promote the general welfare or otherwise ensure public safety" is not reasonable (*People v Santi, supra* at 244). The conclusion that public safety was an improper consideration for the ZBA is contrary to well-settled law and defies common sense.

A determination of an agency entrusted with "applying its special expertise in a particular field to interpret statutory language . . . is entitled to deference" (*Matter of Raritan Dev. Corp. v Silva,* 91 NY2d 98, 102 [1997]) and should govern unless unreasonable or irrational (*see Matter of Arceri v Town of Islip Zoning Bd. of Appeals,* 16 AD3d 411, 412 [2005]; *Matter of Threefold Educ. Found. v Zoning Bd. of Appeals of Vil. of Chestnut Ridge,* 231 AD2d 578 [1996]). The petitioner does not dispute the fact that Enterprise Road is a public highway. The Zoning Board of Appeals found this fact determinative of what constitutes "any property boundary." The record indicates that determination was consistent with past practice (*see Matter of Newman v Zoning Bd. of Appeals, supra* at 544).

The petitioner contends that the determinative factor here is that it has title to the roadbed of Enterprise Road. However, the question of who has title to a public highway has no apparent relevance to the question of whether a target range or facility for the discharge of firearms should be permitted within 500 feet of the highway. Such an interpretation would render enforcement of the provision totally arbitrary and would in no way "promote the general welfare or otherwise ensure public safety" (*People v Santi, supra* at 244).

The petitioner further contends that there is "insufficient evidence" that its new equipment compromises the safety of the public. The question of whether the new equipment has a detrimental effect on the neighborhood should be addressed upon an application for an area variance. The question of whether the petitioner should be granted an area variance has not been determined and is not before this Court.

In view of the foregoing, there is ample basis for sustaining the determination of the ZBA.